UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JAMES FISHBACK,
Plaintiff,
v. Case No.:

ANTHONY RODRIGUEZ, in his individual capacity and official capacity as Chairman of the Miami-Dade County Commission,
Defendant.
_______________________________/

## COMPLAINT

Plaintiff James Fishback ("Fishback") sues Defendant Anthony Rodriguez ("Chairman Rodriguez"), in his individual and official capacities as Chairman of the Miami-Dade County Commission, and alleges:

## INTRODUCTION

At a meeting of the Miami-Dade County Commission, the Chairman opened the floor for public comment on a resolution approving a $155 million bond-financing transaction benefiting a local hospital. Plaintiff James Fishback used that opportunity to argue that the County's financial priorities should favor Miami-Dade residents and institutions. To explain that position, Fishback contrasted the local financing proposal with the Board's decision that same day to expand investments in Israeli government bonds, asking whether the

commissioners served "the people of South Miami or of Jerusalem" and insisting that public money "should be invested here in this community." Although this was a coherent—if sharply critical—argument about local versus foreign financial priorities, Chairman Anthony Rodriguez cut Fishback's microphone and caused his removal because he referenced and criticized the Israel-bond decision. The First Amendment permitted Defendants to enforce reasonable, viewpoint-neutral rules governing time, decorum, and germaneness; it did not permit them to silence an otherwise germane speaker because they disapproved of the viewpoint from which he addressed the County's bond and financial policies.

## NATURE OF THE ACTION

1. This civil-rights action arises from the government silencing and ejecting a citizen from a public hearing because the presiding official disapproved of the citizen's viewpoint concerning the County's financial and bond priorities.
2. On September 1, 2026, the Miami-Dade Board of County Commissioners (the "Board") convened a public meeting and opened a public hearing on Agenda Item 5B, File No. 261453. Item 5B asked the Board to approve the issuance of as much as $155 million in revenue bonds to finance the acquisition, renovation, equipping, reserves, working capital, and related costs of Southern Winds Hospital, a project located in Miami-Dade County.

3. Fishback properly registered to speak on Item 5B. He used his allotted time to argue that government financial policy should prioritize Miami-Dade's local community. As a comparison supporting that position, he criticized the Board's decision that same day to expand the composition of authorized investments of County public funds, including investments in bonds backed by the government of Israel.
4. Fishback stated, among other things, "Do you serve the people of South Miami or of Jerusalem?" and "This money should be invested here in this community." His remarks advanced an intelligible local-versus-foreign financial-priorities argument during a public hearing about governmental approval of a $155 million local bond-financing transaction.
5. Chairman Rodriguez cut off Fishback's microphone, declared in substance that the Israel investment item had already passed and had its own opportunity for public comment, and caused County security officers to remove Fishback before his allotted time expired.
6. Fishback was not boisterous, did not threaten anyone, did not use profanity, and did not materially disrupt the meeting before Chairman Rodriguez suppressed his speech. His removal was triggered by the content and viewpoint of his otherwise protected remarks.

7. The First Amendment permitted the Board to confine the hearing to Item 5B. It did not permit Defendants to allow discussion of the merits, local benefits, and financial priorities implicated by Item 5B while excluding Fishback's critical perspective on those same subjects.
8. Fishback seeks compensatory and nominal damages, punitive damages against Chairman Rodriguez, declaratory and prospective relief to the extent supported by the facts established in discovery, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

9. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.
10. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).
11. This Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and equitable relief under its inherent authority and Federal Rule of Civil Procedure 65.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) because both Defendants reside in this District and all material events occurred in Miami-Dade County, Florida.

13. The Miami Division is the proper division because the events giving rise to this action occurred in Miami-Dade County.

## PARTIES

14. Plaintiff James Fishback is a natural person and citizen of Florida.

15. Defendant Miami-Dade County is a political subdivision of the State of Florida capable of being sued under Florida law and is a "person" subject to suit for prospective relief and damages under 42 U.S.C. § 1983.

16. Defendant Anthony Rodriguez was, at all material times, Chairperson of the Miami-Dade Board of County Commissioners. He is sued in his individual capacity for damages and in his official capacity as Chairman of the Miami-Dade County Commission to the extent necessary for prospective relief.

17. At all material times, Chairman Rodriguez acted under color of state and local law and within the course and scope of his governmental office.

## FACTUAL ALLEGATIONS

### A. MIAMI-DADE OPENED ITEM 5B FOR PUBLIC PARTICIPATION

18. The Board's September 1, 2026 official agenda identified Item 5B, File No. 261453, as a resolution entitled in relevant part: "RESOLUTION APPROVING ISSUANCE BY CAPITAL TRUST AUTHORITY OF ITS REVENUE BONDS IN ONE OR MORE SERIES IN AN AMOUNT NOT TO EXCEED $155,000,000.00" for the benefit of entities associated with Southern Winds Hospital.
19. The proposed resolution stated that the bond proceeds would support a "Plan of Finance" that included acquiring, constructing, expanding, rehabilitating, renovating, and equipping Southern Winds Hospital in Hialeah; funding reserves; supplying working capital; and paying issuance expenses.
20. The resolution further stated that the Board's approval followed public notice and a public hearing required by 26 U.S.C. § 147(f).
21. Although the proposed bonds were conduit revenue bonds rather than County general-obligation debt, Item 5B called for an official governmental decision whether to approve a $155 million bond-financing mechanism benefiting a project in Miami-Dade County.
22. The County's Rules of Procedure opened public-hearing items to registered speakers. Rule 6.03 required a person wishing to speak to register for the particular item. Rule 6.04 generally allowed up to five minutes and permitted the speaker to express support or opposition.

23. Fishback timely and properly registered to speak on Item 5B and was recognized by the presiding officer.

## B. THE SAME MEETING INCLUDED A COUNTY INVESTMENT-POLICY DECISION

24. The same Board agenda included Item 11A2, File No. 261175, a resolution amending the Miami-Dade County Investment Policy.

25. Item 11A2 concerned the investment of County public funds under section 218.415, Florida Statutes. Its recitals expressly addressed County investment in bonds, notes, or instruments backed by the full faith and credit of the government of Israel, including rated and unrated instruments, as well as portfolio composition, percentage thresholds, liquidity, market exposure, and preservation of principal.

26. The Board considered and approved Item 11A2 during the September 1, 2026 meeting before Fishback was recognized to speak on Item 5B.

27. Under the County’s procedures, no new public-comment opportunity was provided at the full Board meeting for Item 11A2 because an opportunity to be heard had previously occurred at committee.

## C. FISHBACK’S REMARKS WERE RELATED TO ITEM 5B

28. When recognized on Item 5B, Fishback began: “Mr. Chairman, I assure you I am not here to talk about Israel.” He referenced the possibility of being escorted out by the officers present.

29. Fishback then challenged the Board’s financial priorities, asking: “Do you serve the people of South Miami or of Jerusalem?”

30. Fishback stated: “This money should be invested here in this community.”

31. Fishback’s position was that governmental financial and bond policy should prioritize local Miami-Dade residents and institutions. He contrasted the local financing proposal then before the Board with the Board’s Israel-bond investment-policy decision as evidence of what he viewed as misplaced financial priorities.

32. Fishback’s comparison bore a reasonable relationship to Item 5B’s subject matter: governmental approval of a major bond-financing transaction for a local project. He did not launch into an unrelated discussion of the Middle East, military affairs, religion, or the Israeli-Palestinian conflict.

33. Fishback’s statement may have criticized or misunderstood the technical distinction between County treasury investments and conduit revenue bonds, but disagreement with, or alleged imprecision in, a citizen’s policy argument does not make the viewpoint constitutionally excludable.

## D. CHAIRMAN RODRIGUEZ SUPPRESSED FISHBACK'S VIEWPOINT

34. Before Fishback's allotted time expired, Chairman Rodriguez interrupted him and stated in substance that the prior Israel-related item had already passed and that an opportunity had been provided to comment on it.
35. Chairman Rodriguez ordered Fishback's removal, stating, "Kick him out," three times. Chairman Rodriguez then caused Fishback's microphone to be cut and directed or authorized County security officers to remove Fishback from the chamber.
36. At the time of the cutoff, Fishback had not exceeded his allotted time.
37. Fishback did not shout over the Board, threaten any official, use profanity, refuse repeated neutral directions about manner, or otherwise cause a material disruption before the decision to silence and remove him.
38. As he was being removed, Fishback continued to speak and stated: "We need a country that puts America first."
39. The stated and apparent reason for silencing Fishback was not noise, safety, congestion, or the expiration of time. It was that he had invoked and criticized the Israel-bond decision in making his financial-priorities argument.
40. Defendants opened Item 5B for public discussion about whether the local financing transaction should be approved, but prohibited Fishback from

expressing the critical viewpoint that the Board's broader bond and investment priorities favored Jerusalem over South Miami.

41. The County's written decorum rule did not independently require Fishback's removal. Rule 6.05 authorizes a presiding officer to bar a person who makes "impertinent or slanderous remarks" or becomes "boisterous." Fishback's remarks were pertinent to his comparative financial-policy argument, were not alleged to be defamatory, and were not boisterous.

42. Chairman Rodriguez did not direct Fishback to tie his comparison more expressly to Item 5B or allow him to use the balance of his allotted time to address the local bond transaction before cutting off his microphone and causing his removal.

43. The cutoff and physical ejection humiliated Fishback, deprived him of the balance of his speaking time, prevented the public and Board from hearing his views, chilled his future participation in County meetings, and caused emotional distress and reputational injury.

44. Fishback intends to attend and speak at future Board meetings, including on future County bond, investment, and financial-policy matters, but reasonably fears renewed silencing or removal if he expresses the same viewpoint in a manner reasonably related to an agenda item.

## E. COUNTY POLICY AND MUNICIPAL RESPONSIBILITY

45. The County's Rules of Procedure, adopted by the Board, vested the Chairperson with authority to preside at Board meetings and "preserve strict order and decorum."

46. Rule 6.05 delegated to the presiding officer the governmental authority to bar a speaker from further appearance based on the officer's determination that the speaker made "impertinent or slanderous remarks" or became "boisterous," subject only to permission to continue granted by a majority of commissioners present.

47. Chairman Rodriguez invoked, purported to invoke, or acted pursuant to that delegated authority when he silenced Fishback and caused his removal.

48. For the immediate management of the hearing and the decision to terminate a speaker's participation, Chairman Rodriguez possessed authority delegated by the Board and exercised that authority as the County's authorized decisionmaker.

49. The Board members present observed Chairman Rodriguez cut off and remove Fishback, did not grant Fishback permission to continue, and allowed Chairman Rodriguez's decision to remain the official action of the Board.

50. In the alternative, the County is responsible because Fishback's injury was caused by the application of the Board-adopted Rules of Procedure, including Rules 2.01 and 6.05, as construed and implemented by the official whom the Board authorized to preside over and control the public hearing.

51. Discovery is expected to show the County's prior practices, instructions to security personnel, training, prior speaker removals, and treatment of comparable remarks, all of which are within Defendants' possession and control.

## THE GOVERNING FIRST AMENDMENT PRINCIPLES

52. A government meeting that permits members of the public to speak on specified subjects is a limited public forum. *McDonough v. Garcia*, 116 F.4th 1319, 1323 (11th Cir. 2024) (en banc). Restrictions in that forum must be reasonable in light of the forum's purpose and viewpoint neutral. Id.

53. Viewpoint discrimination occurs when the government targets "particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819, 829 (1995). Viewpoint discrimination is forbidden even in a limited public forum. *Good News Club v. Milford Central School*, 533 U.S. 98, 106-07 (2001).

54. The government may confine a public meeting to specified subject matter and may regulate genuinely "irrelevant debate" and disruptive conduct. *Jones v. Heyman,* 888 F.2d 1328, 1332-34 (11th Cir. 1989). But the Eleventh Circuit describes the legitimate interest as orderly meetings limited to subject matter "germane to an agenda at hand," and contrasts germane speech with speakers who "ramble aimlessly" about topics "not related to agenda items." *Rowe v. City of Cocoa*, 358 F.3d 800, 803-04 (11th Cir. 2004).

55. *Jones* does not create absolute deference to a chair's off-topic label. The speaker there registered to discuss senior-citizen garbage discounts, began with the commission's general fiscal habits, responded antagonistically to a direction to return to the specific topic, raised his voice, challenged the mayor's authority, and never expressed the substance of his views on the agenda item. 888 F.2d at 1330, 1332-34.

56. Fishback, by contrast, made an identifiable comparative argument about local governmental bond and financial priorities during a hearing on governmental approval of a large local bond-financing transaction. He was silenced because of the disfavored comparison and viewpoint embedded in that argument, not because he was threatening, boisterous, or materially disruptive.

57. The right to be free from viewpoint discrimination in a limited public forum was clearly established at the time of the events. See, e.g., *Rosenberger*, 515 U.S. at 828-30; *Good News Club,* 533 U.S. at 106-07; *Rowe*, 358 F.3d at 804; *Barrett v. Walker County School District*, 872 F.3d 1209, 1225 (11th Cir. 2017); *McDonough*, 116 F.4th at 1323.

## COUNT I
## 42 U.S.C. § 1983 – FIRST AMENDMENT VIEWPOINT DISCRIMINATION AND UNREASONABLE SPEECH RESTRICTION
## (Against Chairman Rodriguez in His Individual Capacity)

58. Fishback realleges paragraphs 1 through 57.

59. Chairman Rodriguez acted under color of state and local law.

60. Fishback engaged in protected speech on a matter of public concern while participating in a government-created forum for public comment on Item 5B.

61. Chairman Rodriguez terminated Fishback's speech and caused his ejection because Fishback expressed a disfavored viewpoint concerning the Board's bond, investment, and local-versus-foreign financial priorities.

62. The restriction was not viewpoint neutral. It was also unreasonable in light of the hearing's purpose because Fishback's comparative financial-policy argument bore a reasonable relationship to the governmental bond-financing proposal under consideration.

63. Chairman Rodriguez's conduct would deter a person of ordinary firmness from continuing to speak or participating in future Board meetings.

64. The constitutional violation was clearly established. A reasonable presiding official would have known that he could enforce a neutral germaneness rule but could not suppress a speaker because of the critical perspective from which the speaker addressed an otherwise permissible subject.

65. Chairman Rodriguez acted intentionally, recklessly, and with callous disregard for Fishback's federally protected rights, supporting an award of punitive damages.

66. As a direct and proximate result, Fishback suffered loss of speaking time, humiliation, emotional distress, reputational injury, chilling of future speech, and other damages to be proved at trial.

67. Even absent proof of actual compensatory injury, Fishback is entitled to nominal damages for the completed violation of his First Amendment rights.

## COUNT II
## 42 U.S.C. § 1983 – MUNICIPAL LIABILITY FOR FIRST AMENDMENT VIOLATION
## (Against Miami-Dade County)

68. Fishback realleges paragraphs 1 through 67.

69. The County, through the Board, created the public forum, adopted the Rules of Procedure governing public participation, delegated immediate control of

speakers to the presiding officer, and supplied the security officers who enforced Chairman Rodriguez's order.

70. Fishback's injury resulted from official County action rather than the frolic of a subordinate employee. Chairman Rodriguez exercised authority affirmatively delegated by the Board under Rules 2.01 and 6.05 to control the hearing, terminate a speaker's appearance, and cause removal.

71. Chairman Rodriguez's decision constituted County policy for the immediate management of the hearing because he was the authorized decisionmaker on that question, and his decision was not reversed by the Board. See *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81 (1986).

72. Alternatively, the Board members present had authority under Rule 6.05 to permit Fishback to continue, observed the basis and effect of the cutoff and removal, and ratified the decision by allowing it to stand as the Board's official disposition of Fishback's speaking opportunity.

73. Alternatively, the violation resulted from the County's official construction and application of its Board-adopted Rules of Procedure to treat a germane but disfavored viewpoint as "impertinent" or otherwise removable.

74. The County's official action was the moving force behind the deprivation of Fishback's First Amendment rights.

75. As a direct and proximate result, Fishback suffered the injuries alleged above and is entitled to compensatory and nominal damages and appropriate declaratory and prospective relief.

## COUNT III
## DECLARATORY AND PROSPECTIVE RELIEF UNDER 42 U.S.C. § 1983
## (Against Miami-Dade County and Chairman Rodriguez in His Official Capacity)

76. Fishback realleges paragraphs 1 through 75.

77. An actual controversy exists concerning whether Defendants may silence or remove Fishback from future Board meetings when he presents a germane comparative argument criticizing the County's Israel-bond investment policy as part of his comments on County bond or financial matters.

78. Fishback intends to engage in substantially similar protected speech at future Board meetings addressing County bond, investment, or financial-policy matters and faces a credible threat that Defendants will again apply the challenged interpretation and practice.

79. Fishback is entitled to a declaration that Defendants violated the First Amendment by cutting off and removing him on September 1, 2026 because of his viewpoint.

80. If prospective standing is established, Fishback is entitled to narrowly tailored injunctive relief prohibiting Defendants from treating his Israel-bond criticism

as categorically irrelevant when it forms part of a reasonably related argument on a future County bond, investment, or financial-policy item.

81. Prospective relief would not prevent Defendants from enforcing reasonable, viewpoint-neutral time limits, germaneness rules, or decorum restrictions against actual disruption.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff James Fishback respectfully requests that the Court:

A. Enter judgment in Fishback's favor and against Defendants;

B. Declare that Defendants' suppression and removal of Fishback based on his viewpoint violated the First and Fourteenth Amendments;

C. Award compensatory damages against Defendants in an amount to be determined by the jury;

D. Award nominal damages;

E. Award punitive damages against Chairman Rodriguez in his individual capacity;

F. Enter narrowly tailored prospective injunctive relief if Fishback establishes Article III standing for that relief;

G. Award reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

H. Award pre- and post-judgment interest as allowed by law; and

I. Grant all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Fishback demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

Dated: September 3, 2026

Respectfully submitted,

*/s/ Anthony F. Sabatini*

ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

*/s/ Gavin B. Rollins*

GAVIN B. ROLLINS, ESQ.
FL BAR No. 1064417
gavin@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st AVENUE
MOUNT DORA, FL 32757
T: (352)-328-4892

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished this 3rd day of September 2026, via email to all parties of record.

*/s/ Anthony F. Sabatini*