UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JAMES FISHBACK,
Plaintiff,

v.

CASE NO. 26-cv-26077-JB
District Judge Jacqueline Becerra
Magistrate Judge Yeney Hernandez

ANTHONY RODRIGUEZ, in his individual capacity and official capacity as Chairman of the Miami-Dade County Commission,
Defendant.
_____________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE AND TO STRIKE DEMAND FOR PUNITIVE DAMAGES**

Plaintiff James Fishback ("Fishback") responds in opposition to Defendants' Motion to Dismiss the Complaint with Prejudice and to Strike Demand for Punitive Damages [ECF No. 17] and states:

## INTRODUCTION

The Motion asks the Court to resolve disputed questions of meaning, motivation, and comparability against Fishback at the pleading stage. That is not the Rule 12 standard.

The Complaint plausibly alleges that Fishback registered to address Agenda Item 5(B), a public-hearing item seeking approval of a $155 million bond-financing mechanism for a hospital in Hialeah. Fishback argued that governmental financial policy should prioritize Miami-Dade residents and

institutions. As part of that argument, he contrasted the local financing matter with the Board's Israel-bond investment decision.

Fishback's remarks expressly compared the needs of "the deputies in this County" and "the teachers in this County" with the Commission's Israel-bond policy. He asked whether the commissioners served "the people of Hialeah or of Haifa," "the people of Aventura or of Tel Aviv," and "the people of South Miami or of Jerusalem." He stated that the money should be invested "here in this community" and "in Miami-Dade County."

Defendants characterize these remarks as having nothing to do with Item 5(B). But the official recording does not eliminate the reasonable inference alleged in the Complaint: Fishback was making a local-versus-foreign financial-priorities argument during a hearing concerning governmental approval of a substantial financing mechanism for a hospital in Hialeah.

The recording also does not establish that Fishback was threatening, profane, boisterous, or materially disruptive before Chairman Rodriguez terminated his speaking opportunity. Defendants rely on Fishback's continued speech after his microphone had been cut and his removal ordered. That later conduct cannot retroactively establish the reason for a governmental decision that had already occurred.

Nor can the Court decide at the pleading stage that Chairman Rodriguez acted without a discriminatory motive merely because Defendants offer an alternative interpretation of the recording. The Complaint's interpretation is plausible and must receive the benefit of reasonable inferences.

Defendants' remaining arguments similarly do not support dismissal with prejudice. Qualified immunity does not protect intentional viewpoint discrimination that was clearly prohibited by controlling precedent. Legislative immunity does not automatically extend to an administrative enforcement decision directed at one speaker. The Complaint plausibly alleges that the County delegated immediate and final control over public speakers to the presiding officer and that the Board permitted the decision to stand. Fishback has also alleged sufficiently concrete plans for future speech to support prospective relief.

At an absolute minimum, any pleading deficiency should result in leave to amend—not dismissal with prejudice.

## LEGAL STANDARD

A complaint survives Rule 12(b)(6) when it contains sufficient factual matter, accepted as true, to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability. It requires enough factual content to permit a reasonable inference that the defendant is liable. Id.

The Court must accept well-pleaded factual allegations as true, construe them in the plaintiff's favor, and draw reasonable inferences in the plaintiff's favor. *Cambridge Christian School, Inc. v. Florida High School Athletic Association, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019).

Although a court may consider an incorporated document whose authenticity is undisputed, that doctrine does not authorize the Court to weigh

competing interpretations, make credibility determinations, or draw disputed inferences against the plaintiff. The exhibit controls only when it conclusively contradicts an allegation. See *Baker v. City of Madison*, 67 F.4th 1268, 1276-77 (11th Cir. 2023).

Here, the recording establishes the words spoken and the sequence of events. It does not conclusively establish the meaning of Fishback's comparative argument, Chairman Rodriguez's motivation, or whether the same germaneness standard was applied consistently.

## ARGUMENT

## I. THE COMPLAINT PLAUSIBLY ALLEGES VIEWPOINT DISCRIMINATION

### A. The Public Hearing Was a Limited Public Forum

The parties agree that public comment on Item 5(B) occurred in a limited public forum. In that forum, restrictions must be reasonable in light of the forum's purpose and viewpoint neutral. *McDonough v. Garcia*, 116 F.4th 1319, 1323 (11th Cir. 2024) (en banc).

Fishback does not dispute that the Commission could limit public comment to Item 5(B). Nor does he dispute that the presiding officer could enforce reasonable time, decorum, and germaneness rules.

The constitutional violation alleged is not the existence of a germaneness rule. It is the discriminatory application of that rule to Fishback's viewpoint. A facially valid subject-matter rule cannot be used as a pretext for suppressing a disfavored perspective on an otherwise permissible subject.

### B. Fishback's Remarks Plausibly Related to Item 5(B)

Item 5(B) asked the Board to approve the issuance of up to $155 million in revenue bonds to support the acquisition, renovation, equipping, reserves, working capital, and related expenses of Southern Winds Hospital in Hialeah. ECF No. 17-3 at 3-5.

The proposed financing was not a County general-obligation debt. But Item 5(B) still required the Board to decide whether to grant governmental approval to a substantial financing mechanism benefiting a local institution. The public notice expressly invited comment for or against the proposed bond issuance and the nature and location of the project. Id. at 7-8.

Fishback's remarks concerned governmental financial priorities. He contrasted County deputies, County teachers, Hialeah, Aventura, South Miami, and investment in "this community" with the County's policy authorizing investments in Israeli government bonds.

The fact that Fishback did not utter the words "Item 5(B)" is not dispositive. Germaneness depends on the substance of an argument, not whether the speaker recites an agenda number. Fishback's repeated references to local institutions and Miami-Dade communities plausibly conveyed his position that the governmental financial decision before the Commission should favor local interests.

Defendants' own Exhibit 17-5 describes Fishback as "contrasting cities in Miami-Dade with cities in Israel." ECF No. 17-5 at 2. That description supports—not defeats—the Complaint's allegation that Fishback was making a comparative local-versus-foreign financial-policy argument.

Whether the comparison was sufficiently direct, technically correct, or persuasive is not the question at the pleading stage. The question is whether the alleged connection is plausible. It is.

**C. Defendants' Interpretation of the Recording Is Not the Only Reasonable Interpretation**

Defendants argue that Fishback spoke about "nothing but Israel." The recording, however, contains repeated references to Miami-Dade County, County employees, Hialeah, Aventura, South Miami, and local investment. Those statements permit a reasonable inference that Fishback's criticism of the Israel-bond policy was offered to support a broader position about local financial priorities. The Court cannot adopt Defendants' competing interpretation merely because they consider it more persuasive.

The recording also does not conclusively establish that Fishback violated a neutral decorum rule before his microphone was cut. The Complaint alleges that, before Chairman Rodriguez acted, Fishback had not threatened anyone, used profanity, become boisterous, or materially disrupted the meeting. Compl. ¶¶ 36-39.

Defendants emphasize that Fishback continued speaking after his microphone was cut. But post-cutoff conduct cannot retroactively establish the reason for the earlier decision. The relevant inquiry is whether Chairman Rodriguez lawfully terminated Fishback's speech based on Fishback's conduct and remarks at the moment the decision was made.

**D. Jones Does Not Require Dismissal**

Defendants rely on *Jones v. Heyman*, 888 F.2d 1328 (11th Cir. 1989). The speaker in *Jones* began by criticizing the commission's general fiscal habits, responded antagonistically to an individualized direction, raised his voice, challenged the mayor's authority, and never expressed the substance of his position on the agenda item. Id. at 1330, 1332-34.

The Eleventh Circuit emphasized evidence that the mayor perceived an escalating disruption, a possible threat of violence, and a direct challenge to his authority. Id. at 1334.

The Complaint alleges materially different circumstances. Fishback did not threaten anyone, use profanity, raise his voice over the Commission, or challenge Chairman Rodriguez's authority before the cutoff. He expressed the substance of his policy position through repeated comparisons between local needs and foreign-backed investments.

Chairman Rodriguez did not give Fishback an individualized direction to clarify the relationship between his comments and Item 5(B), allow him to redirect his remarks, or warn him that his next statement would terminate his turn. Instead, Chairman Rodriguez cut his microphone and ordered his removal. At minimum, whether Fishback's conduct was materially analogous to the disruption in *Jones* cannot be resolved against him on a motion to dismiss.

**E. The Treatment of Other Speakers Does Not Conclusively Disprove Discrimination**

Defendants argue that other speakers criticizing Israel were permitted to complete their comments. That evidence may ultimately be relevant, but it does not conclusively negate Fishback's allegations.

Selective enforcement can be discriminatory even when the government does not suppress every speaker holding the disfavored perspective. Determining whether the cited speakers were similarly situated requires a fact-intensive comparison of their words, timing, treatment, opportunities to clarify, and the presiding officer's responses.

For example, Defendants' own summary shows that Marcello Valladares began by addressing Item 5(B) and the County's investment portfolio but was cut off when he criticized foreign investment. ECF No. 17-5 at 1. Gilan Fandel likewise began by discussing Item 5(B) and County investment choices but was cut off upon criticizing Israel's conduct in Gaza. Id. Mohannudd Mohammad was cut off after calling Item 11(A)(2) "an absolute disgrace." Id. at 1-2.

That pattern does not conclusively establish a neutral dividing line. It also permits an inference that the presiding officer tolerated criticism only up to a point and terminated speakers when their criticism became sufficiently direct or disfavored.

The Court should not resolve that competing inference on a Rule 12 motion.

## II. QUALIFIED IMMUNITY DOES NOT REQUIRE DISMISSAL OF COUNT I

### A. The Complaint Plausibly Alleges a Constitutional Violation

For the reasons above, the Complaint plausibly alleges that Chairman Rodriguez terminated Fishback's speech because of the critical viewpoint from which Fishback addressed governmental financial priorities.

Viewpoint discrimination in a limited public forum violates the First Amendment. *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819, 829-30 (1995); *Good News Club v. Milford Central School*, 533 U.S. 98, 106-07 (2001); *McDonough*, 116 F.4th at 1323.

Defendants' qualified-immunity argument depends on accepting their disputed premise that Chairman Rodriguez merely enforced a neutral subject-matter rule. The Complaint alleges otherwise. At the pleading stage, the Court must analyze immunity based on the facts alleged and reasonable inferences in Fishback's favor.

### B. The Prohibition Against Viewpoint Discrimination Was Clearly Established

Long before September 2026, the Supreme Court had clearly established that government may restrict a limited public forum by subject matter but may not suppress particular viewpoints on a permitted subject. *Rosenberger*, 515 U.S. at 829-30; *Good News Club*, 533 U.S. at 106-07.

The Eleventh Circuit has likewise recognized that restrictions at public meetings must be viewpoint neutral. *Rowe v. City of Cocoa*, 358 F.3d 800, 802-04 (11th Cir. 2004); *McDonough*, 116 F.4th at 1323. It has also held that discriminatory exclusion from a limited public forum violates clearly established

law. See *Barrett v. Walker County School District*, 872 F.3d 1209, 1225 (11th Cir. 2017).

The right at issue is not a generalized right to speak indefinitely or discuss any subject at any time. It is the right not to be silenced because of one's viewpoint while presenting an otherwise reasonably related argument in a government-created forum.

Under the Complaint's allegations, a reasonable presiding official would have understood that he could direct Fishback to remain germane, enforce a neutral time limit, and respond to actual disruption, but could not characterize a comparative financial-policy argument as irrelevant merely because it criticized the County's Israel-bond decision.

**C. Jones Did Not Authorize Viewpoint-Based Enforcement**

*Jones* does not clearly authorize Chairman Rodriguez's alleged conduct. It recognizes authority to control genuinely irrelevant and disruptive speech. It does not authorize a presiding official to suppress a germane argument based on the viewpoint expressed.

Indeed, *Jones* cautioned that an erroneous ruling does not "automatically" create constitutional liability. 888 F.2d at 1334. The use of "automatically" necessarily leaves room for liability when the alleged facts support intentional viewpoint discrimination rather than a good-faith mistake.

The Complaint alleges intentional discrimination: Chairman Rodriguez focused on Fishback's reference to the Israel-bond decision, cut his microphone while time remained, gave him no meaningful opportunity to clarify, and

ordered his physical removal despite the absence of prior material disruption. Those allegations distinguish this case from a mere mistaken germaneness ruling.

**III. LEGISLATIVE IMMUNITY DOES NOT BAR COUNT I**

Legislative immunity depends on the nature of the challenged act, not the title of the official or the physical location where the act occurred. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998).

Legislative acts generally formulate policy and apply broadly. Administrative or executive acts apply existing policy to particular individuals. See *Crymes v. DeKalb County*, 923 F.2d 1482, 1485 (11th Cir. 1991); *Yeldell v. Cooper Green Hospital, Inc.*, 956 F.2d 1056, 1062-63 (11th Cir. 1992); *Littlejohn v. School Board of Leon County*, 132 F.4th 1232, 1242 (11th Cir. 2025).

The Eleventh Circuit recently reiterated this distinction. When a challenged decision affects specific individuals rather than the general population, it is more likely administrative and outside legislative immunity. *Acevedo v. City of Miami*, No. 24-12650, slip op. at 11-12 (11th Cir. Aug. 26, 2026). Chairman Rodriguez's decision did not enact a rule, amend the Commission's procedures, vote on Item 5(B), or formulate policy of general application. It applied existing meeting rules to one identified speaker and caused that individual's physical removal.

That individualized enforcement decision was administrative in function. The fact that it occurred during a meeting on a legislative item does not transform every act performed during that meeting into protected legislation.

Defendants principally rely on nonbinding district-court decisions from other jurisdictions. Those authorities cannot override the Eleventh Circuit's functional distinction between broadly applicable legislative acts and individualized administrative enforcement.

The Court should therefore reject legislative immunity at the pleading stage or defer the issue until a factual record establishes the precise function Chairman Rodriguez performed.

## IV. COUNT II PLAUSIBLY ALLEGES MUNICIPAL LIABILITY

### A. The Complaint Identifies Official County Action

The Complaint does not rely on respondeat superior. It alleges that:

1. The Board created the public-comment forum;
2. The Board adopted the Rules of Procedure governing that forum;
3. Rules 2.01 and 6.05 delegated immediate control of speakers to the presiding officer;
4. Chairman Rodriguez invoked that delegated authority when he terminated Fishback's appearance;
5. County security officers implemented Chairman Rodriguez's order;
6. The Board members present observed the decision and permitted it to stand; and
7. The injury resulted from the Board-adopted rules as officially construed and applied by the officer the Board authorized to control the hearing.

Compl. ¶¶ 45-51, 68-74.

Those allegations identify official County action, not the private frolic of a subordinate employee.

**B. Chairman Rodriguez Possessed Final Authority Over Fishback's Immediate Speaking Opportunity**

A single decision may constitute municipal policy when made by an official possessing final authority concerning the particular action. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986).

The relevant inquiry is not whether Chairman Rodriguez possessed authority to enact every County policy. It is whether he possessed final authority over the particular decision that caused the alleged injury: terminating Fishback's immediate speaking opportunity and directing his removal.

Rule 2.01 required the Chairperson to preside and preserve order and decorum. Rule 6.05 authorized the presiding officer to bar a speaker from further appearance. ECF No. 17-2. Chairman Rodriguez's order was immediately implemented by County personnel. Once Fishback was removed, no meaningful review could restore his lost speaking opportunity.

Rule 6.05's provision allowing a majority of commissioners to grant permission to continue does not conclusively defeat finality. The Complaint alleges that the Board members were present, observed the decision, did not permit Fishback to continue, and allowed the decision to stand as the Board's official disposition of his appearance.

Whether state and County law made Chairman Rodriguez a final policymaker for immediate control of speakers requires a functional examination

of the delegated authority and available review. That issue should not be resolved against Fishback before development of the record.

**C. The Complaint Plausibly Alleges Ratification and an Official Construction of the Rules**

The Complaint alleges more than the Board's passive ignorance. It alleges that the commissioners observed Chairman Rodriguez invoke Board-delegated authority, possessed the authority under Rule 6.05 to permit Fishback to continue, declined to do so, and allowed County security officers to enforce the removal.

The Complaint further alleges that the constitutional injury resulted from the official construction and application of Board-adopted Rules 2.01 and 6.05 to treat a germane but disfavored viewpoint as "impertinent" or removable. Compl. ¶¶ 49-50, 72-74.

At the pleading stage, those alternative theories plausibly allege that official County action was the moving force behind Fishback's injury. *Matthews v. Columbia County*, 294 F.3d 1294 (11th Cir. 2002), was decided on a developed record concerning the motives of individual commissioners. It does not authorize the Court to reject Fishback's factual allegations before discovery into the Board's contemporaneous understanding, security procedures, prior practices, and treatment of comparable speech.

**D. Dismissal With Prejudice Would Be Improper**

Even if the Court concludes that Count II requires more particularized allegations concerning final policymaking authority or ratification, dismissal

with prejudice would be inappropriate. Fishback should be permitted to amend to clarify the County's presence in the caption, separate his alternative municipal-liability theories, and plead additional facts consistent with Rule 11.

## V. FISHBACK HAS ADEQUATELY ALLEGED STANDING FOR PROSPECTIVE RELIEF

### A. The Complaint Alleges a Credible Threat of Repetition

The Complaint alleges that Fishback intends to attend and speak at future Board meetings concerning County bond, investment, and financial-policy matters. Compl. ¶¶ 44, 78. It further alleges that he intends to express substantially similar criticism in a manner reasonably related to the pending item and reasonably fears renewed silencing or removal. Id.

Those allegations identify:

1. The governmental body Fishback intends to address;
2. The recurring public forum he intends to use;
3. The categories of agenda items he intends to address;
4. The substance and viewpoint of his intended speech;
5. The same governmental rules under which he was previously removed; and
6. The same presiding official who previously caused his removal.

That is more concrete than a generalized "some day" intention.

### B. Elend Is Distinguishable

In *Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006), the plaintiffs proposed to protest at unspecified future presidential appearances at unknown locations under circumstances dependent on events that might never occur. Id. at 1207-08.

Here, the Miami-Dade County Commission meets on a recurring public schedule. Fishback has identified the forum, governmental body, type of agenda matter, intended message, and official whose conduct creates the threat. He need not wait until the County again silences and removes him before seeking prospective relief.

The prior enforcement against Fishback also supplies evidence that the threat is credible. This is not a purely pre-enforcement challenge by a person who has never been subjected to the challenged practice.

**C. The Declaratory and Injunctive Requests Flow From the Substantive Claims**

Defendants argue that Count III is not a standalone cause of action because declaratory and injunctive relief are remedies. Even if that characterization is correct, it does not justify dismissal of the requested relief.

Federal pleadings are construed to do justice. Fed. R. Civ. P. 8(e). Count III provides notice of the prospective remedies Fishback seeks for the constitutional violations asserted in Counts I and II. The Court may construe Count III as a request for relief tied to those substantive claims rather than dismissing the remedies based on their placement under a separate heading.

Fishback's requested declaration also concerns the parties' continuing dispute over how the rules may be applied to his intended future speech. It is not merely a request for an advisory declaration about completed conduct.

Alternatively, Fishback should receive leave to amend and place the requested declaratory and injunctive relief solely in the prayer for relief.

## VI. THE COMPLAINT PROVIDES ADEQUATE NOTICE AND DOES NOT WARRANT DISMISSAL WITH PREJUDICE AS A SHOTGUN PLEADING

Each count identifies the defendant, legal theory, and conduct on which it rests:

- Count I asserts individual-capacity First Amendment liability against Chairman Rodriguez;
- Count II asserts municipal liability against Miami-Dade County; and
- Count III identifies the requested declaratory and prospective relief against the County and Chairman Rodriguez in his official capacity.

The incorporation of preceding factual allegations does not make it impossible to determine which conduct supports each count. Defendants' 29-page Motion addresses every claim in detail, demonstrating that they understand the allegations and theories asserted.

To the extent Count II incorporates Count I's allegations or Count III incorporates both preceding counts unnecessarily, that is a curable drafting issue. It does not justify dismissal with prejudice.

When a complaint is dismissed as a shotgun pleading and the plaintiff has not previously received an opportunity to replead, the Eleventh Circuit generally requires an opportunity to amend. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295-96 (11th Cir. 2018). Fishback has not previously amended his Complaint or disregarded a repleading order.

Accordingly, if the Court identifies a pleading-structure problem, the appropriate remedy is leave to file an amended complaint separating the incorporated allegations—not dismissal with prejudice.

## VII. THE PUNITIVE-DAMAGES REQUEST SHOULD NOT BE STRICKEN

Punitive damages may be awarded under § 1983 when a defendant acts with evil motive or intent or with reckless or callous indifference to federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The Complaint does more than recite that standard. It alleges that Chairman Rodriguez:

1. Cut Fishback's microphone before his allotted time expired;
2. Ordered or authorized his physical removal;
3. Acted when Fishback had not threatened anyone, used profanity, become boisterous, or materially disrupted the meeting;
4. Focused on Fishback's criticism of the Israel-bond decision;
5. Gave Fishback no individualized opportunity to clarify or redirect his remarks; and
6. Intentionally suppressed Fishback's speech despite clearly established First Amendment restrictions on viewpoint discrimination.

Compl. ¶¶ 34-43, 61-65.

Taken as true, those allegations permit a reasonable inference of intentional conduct or reckless indifference to Fishback's First Amendment rights. Whether the evidence ultimately supports punitive damages is a question for a later stage.

Motions to strike are disfavored and should not be used to resolve disputed factual questions concerning a defendant's state of mind. The punitive-damages request should therefore remain.

Alternatively, if the Court finds the allegations insufficiently particular, Fishback should be allowed to amend rather than having the request permanently stricken.

**<u>CONCLUSION</u>**

The Complaint plausibly alleges that Chairman Rodriguez terminated Fishback's speech because of the viewpoint from which he addressed governmental financial priorities. The official recording does not conclusively contradict that allegation. It records Fishback comparing County employees and Miami-Dade communities with foreign-backed investments during a hearing concerning governmental approval of a local financing mechanism.

The remaining issues—Chairman Rodriguez's motivation, the proper characterization of Fishback's remarks, whether similarly situated speakers received different treatment, the nature of the Chairman's delegated authority, and the Board's involvement—cannot properly be resolved against Fishback on a motion to dismiss.

Accordingly, Fishback respectfully requests that the Court deny Defendants' Motion to Dismiss and Motion to Strike.

Alternatively, if the Court determines that any claim is insufficiently pleaded or that the Complaint constitutes a shotgun pleading, Fishback requests leave to file an amended complaint. Dismissal with prejudice is not warranted.

Dated: October 9, 2026.

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished this 9th day of October 2026, via email to all parties of record.

*/s/ Anthony F. Sabatini*