**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:26-cv-26077-JB**

JAMES FISHBACK,
Plaintiff,

v.

ANTHONY RODRIGUEZ, in his individual capacity and official capacity as Chairman of the Miami-Dade County Commission,

Defendant.
_____________________________________/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Fishback concedes the two facts that decide this motion: the First Amendment "permitted the Board to confine the hearing to Item 5B," and he never mentioned Item 5(B). Compl. ¶ 7 [ECF No. 1]; Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Resp.") [ECF No. 25] at 5. What remains is his claim that remarks about the Board's Israel-bond vote were actually an argument about "local financial priorities." Resp. at 6. But that argument is a *post hoc* reconstruction of the events that day. The words Fishback leans on—that the money should be "invested here in this community" and "in Miami-Dade County," Resp. at 2, 5—came only ***after*** his microphone was cut (at 2:09:47) and as the Chairman called for the sergeants (at 2:09:50). *See* Video at 2:09:47–2:10:00. Fishback now pretends those words came before the cutoff to justify this lawsuit. *See* Compl. ¶¶ 4, 29–30, 34. But his own Response forecloses that move by conceding that what happened after the cutoff "cannot retroactively establish the reason" for the Chairman's decision. Resp. at 6. And ***before*** the Chairman acted, Fishback did not utter ***a single word*** about Item 5(B). *See* Video at 2:08:52–2:09:47. And so the Chairman ended his turn for failing to speak on Item 5(B), as the Rules required.

Fishback also leaves many of Defendants' arguments unanswered, thereby conceding them, and responds to others with bare assertions of law unsupported by any authority. Because he cannot overcome the Chairman's immunities and does not meaningfully respond to Defendants' remaining arguments, the Motion to Dismiss [ECF No. 17] should be granted.

## ARGUMENT

### I. The Complaint and the Video Establish There Was No Viewpoint Discrimination, Entitling the Chairman to Qualified Immunity on Count I.

Fishback's premise that the Court must accept his "interpretation" of the Video and "analyze immunity based on the facts alleged" is wrong. Resp. at 3–4, 6, 9. The Eleventh Circuit has made clear that where "a valid recording completely and clearly contradicts a party's testimony, that testimony is not credible, and the court should disregard it." *Brooks v. Miller*, 78 F.4th 1267, 1278 (11th Cir. 2023). This is true even at the motion to dismiss stage. *See Baker v. City of Madison,* 67 F.4th 1268, 1277–78 (11th Cir. 2023) ("[W]here a video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account and view the facts in the light depicted by the video.") (cleaned up).

Here, Fishback alleges that he "contrasted the local financing proposal then before the Board with the Board's Israel-bond investment-policy decision," Compl. ¶ 31. No, he didn't. The Video shows he never mentioned the local financing proposal—not the hospital, not the bonds, not Item 5(B). *See* Video at 2:08:52–2:09:47. The Complaint likewise presents Fishback's statements that the commissioners should serve "the people of South Miami" and that "this money should be invested here in this community" as part of his remarks ***before*** the Chairman "interrupted him." Compl. ¶¶ 4, 29–30, 34. But the Video shows Fishback said those words only ***after*** his microphone was cut off. *See* Video at 2:09:48–2:10:00. Because the Video clearly contradicts Fishback's allegations, the Court must accept the Video's depiction as true. Viewed that way,

Fishback's remarks before the cutoff were not in any way germane to Item 5(B), and ending his turn was exactly what the Rules required and what the First Amendment permitted**.**

To explain away the fact that other speakers who criticized Israel finished their remarks, Fishback theorizes that the Chairman "tolerated criticism only up to a point" and cut off speakers whose criticism became "sufficiently direct." Resp. at 8. But the Video flatly refutes this. Mina Trachtenberg closed with "please divest from apartheid"—and finished. Video at 2:05:40–2:06:14. Tom Carney criticized the "risky bonds of a foreign government" and urged the Board to consider the people of Palestine—and finished. *Id.* at 1:58:59–1:59:52. Rochelle Vargas urged investing locally rather than in foreign governments—and finished. *Id.* at 2:04:23–2:05:33. Each tied those views to Item 5(B). The speakers who lost the floor turned away from Item 5(B). *Id.* at 2:03:54–2:04:23 (Harrison); 2:06:46–2:06:52 (Valladares); 2:06:57–2:07:29 (Fandel); 2:08:29–2:08:41 (Mohammad). Fishback's own Response proves the point: Mohammad was cut off "after calling Item 11(A)(2) 'an absolute disgrace.'" Resp. at 8. That is a subject-matter line, not viewpoint discrimination.

Fishback concedes the comparator speakers "may ultimately be relevant," but says they do not "conclusively negate" his allegations. *Id.* That is not the standard: where the record supplies an "obvious alternative explanation," an inference of discrimination is not plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)). Similarly, Fishback's blanket assertion that "[s]elective enforcement can be discriminatory even when the government does not suppress every speaker holding the disfavored perspective," Resp. at 8, is unsupported by any authority, and so the Court should disregard it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (arguments raised "in a perfunctory manner without supporting arguments and authority" are abandoned).

Moreover, Fishback's effort to distinguish *Jones v. Heyman*, 888 F.2d 1328 (11th Cir. 1989), only shows how closely it fits. By his own description, the speaker in *Jones* registered to address one agenda item, used his time to attack the commission's "general fiscal habits," and "never expressed the substance of his views on the agenda item." Compl. ¶ 55; *see* Resp. at 7. That is exactly what Fishback did here. He registered for Item 5(B), used his time to attack the Board's Israel-bond vote and the County's struggles to pay its deputies and teachers, but never said a word for or against the item before the Board. *See* Video at 2:08:52–2:09:47. Fishback also attempts to distinguish *Jones* by relying on the disruption that occurred there, which he claims is absent here. Resp. at 6–7. But *Jones* extends to "irrelevant debate" as well as "disruptive behavior," 888 F.2d at 1333, and Fishback concedes the Chairman could regulate irrelevant debate. Compl. ¶ 54.

Nor does it help him that the *Jones* speaker received "individualized direction" to clarify his position. Resp. at 7. Fishback had more notice, not less. The chambers had been told at least six times to confine remarks to Item 5(B), Mot. at 7, the speaker immediately before Fishback received that exact direction, *see* Video at 2:07:53–2:08:06, and Fishback opened by acknowledging the rule. *Id.* at 2:08:52. Finally, Fishback ignores the fact that *Jones* upheld the mayor's ruling under the heightened scrutiny then applied to designated public forums. 888 F.2d at 1331. Under the more deferential limited-public-forum standard that governs today, the Chairman's ruling stands on even firmer ground. *McDonough v. Garcia*, 116 F.4th 1319, 1328–29 (11th Cir. 2024) (en banc). Because the Chairman enforced a concededly valid, viewpoint-neutral subject-matter limit, Fishback fails at prong one, and the Chairman is entitled to qualified immunity and dismissal of Count I with prejudice.

Even if Fishback had plausibly alleged a constitutional violation, the Chairman would still be entitled to qualified immunity under prong two. Fishback, who bears the burden, identifies no

binding decision that would have put the Chairman on notice that ending a speaker's turn under these circumstances violates the First Amendment. According to Fishback, it is "clearly established that [the] government may restrict a limited public forum by subject matter but may not suppress particular viewpoints on a permitted subject." Resp. at 9. Nobody is arguing otherwise. But clearly established law may not be defined "at a high level of generality," which is exactly what Fishback does. *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (cleaned up); *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). The question here is whether every reasonable presiding officer would have known that ending the turn of a speaker who, after repeated warnings, strayed from the agenda item violates the First Amendment. Fishback cites no case so holding.[1] And Fishback's conclusion that "a reasonable presiding official would have understood" his conduct was unlawful, Resp. at 10, cites nothing. Because no clearly established law prohibited the Chairman's conduct, he is entitled to qualified immunity and dismissal of Count I.[2]

## II. Chairman Rodriguez Is Entitled to Legislative Immunity on Count I.

Fishback argues the Chairman's ruling was "administrative" in nature, and not legislative, because it applied existing rules to "one identified speaker." Resp. at 11. But the conduct at issue in every case he cites involved an administrative decision regarding a particular person's rights, not participation in the legislative process itself: denying a landowner's permit application, *Crymes*

---

[1] The cases Fishback does cite have no bearing on prong two of the qualified-immunity analysis. *See* Resp. at 9–10. *Rosenberger* and *Good News Club* state the general rule against viewpoint discrimination, which nobody disputes. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001). *Rowe* and *McDonough* confirm a presiding officer's authority to confine speakers to the subject at hand. *Rowe v. City of Cocoa*, 358 F.3d 800, 802–03 (11th Cir. 2004); *McDonough*, 116 F.4th at 1328–29. And *Barrett v. Walker County School District*, 872 F.3d 1209 (11th Cir. 2017), concerned a facial challenge to a policy requiring speakers to obtain the superintendent's advance approval—not a presiding officer's real-time germaneness ruling.

[2] If the Court finds entitlement to either qualified immunity or legislative immunity, it need not address entitlement to the other immunity. *See Woods v. Gamel*, 132 F.3d 1417, 1418 n.2 (11th Cir. 1998) (declining to decide qualified immunity after holding county commissioners entitled to absolute legislative immunity).

*v. DeKalb County*, 923 F.2d 1482, 1485–86 (11th Cir. 1991); making hiring and firing decisions at a county hospital, *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062–63 (11th Cir. 1992); terminating a police chief, *Acevedo v. City of Miami*, No. 24-12650, 2026 WL 2508872, at *4 (11th Cir. Aug. 26, 2026); and implementing a school support plan for a single student, in a case that did not involve legislative immunity at all, *Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1242 (11th Cir. 2025). None of these cases involved a presiding officer's conduct in a public hearing on a pending resolution, and none holds that a legislative act becomes administrative merely because it is directed at a single person.

Indeed, Fishback's own authority confirms that acts that are "'an integral part of the deliberative and communicative processes'" by which legislators consider legislation—including "'participating in committee investigations and proceedings'"—are legislative in nature. *Yeldell*, 956 F.2d at 1062 (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972), and citing *Tenney v. Brandhove*, 341 U.S. 367, 377–79 (1951)). Presiding over a public hearing required by federal law, and ruling on whether comment addressed Item 5(B), is exactly that kind of legislative activity. Fishback cites no case holding otherwise, and he does not distinguish the decisions cited in Defendants' Motion holding that presiding over public comment is legislative. *See* Mot. at 17. Because the Chairman's ruling was legislative in nature, he is entitled to absolute legislative immunity and dismissal of Count I with prejudice.

**III. Fishback Fails to State a Claim for Municipal Liability in Count II.**

Fishback does not respond to—and therefore concedes—Defendants' argument that absent an underlying constitutional violation, Count II fails as a matter of law. *See* Mot. at 19; *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any

portion or claim in a motion indicates such portion, claim or defense is unopposed.") (cleaned up); S.D. Fla. L.R. 7.1(c)(1). For this reason alone, Count II should be dismissed.

Beyond that, Fishback argues that the Board, through Rules 2.01 and 6.05, delegated to the Chairman final authority over speakers at its meetings such that the Chairman's decision to end Fishback's turn was itself a County policy. Resp. at 12–13; Compl. ¶¶ 45–48. But as Defendants noted, final policymaking authority for the County rests with the thirteen-member Board acting by majority vote, not with any single commissioner. *See* Mot. at 21 (citing Miami-Dade County Home Rule Charter § 1.01(A)); Rule 5.03 [Ex. 17-2 at 23]; *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002)). Fishback responds by arguing that whether the Chairman is a final policymaker for the County "requires a functional examination of the delegated authority and available review" that "should not be resolved against Fishback before development of the record." Resp. at 13–14. But Fishback cites no authority for that proposition, and the law is to the contrary.

Whether an official has final policymaking authority "is a question of state law," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), that the court must resolve—not a fact to be developed in discovery. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (holding that "the trial judge must identify" the officials with final policymaking authority). The relevant law—the County's Charter and the Board's Rules—is already before the Court, and it answers the question. The Board is "the legislative and the governing body of the county," Charter § 1.01(A); it adopted the Rules of Procedure, Compl. ¶ 45; and it acts only by majority vote, Rule 5.03 [Ex. 17-2 at 23]. Those rules, not the Chairman, define what speakers may address: only an item open for public hearing for which the speaker registered. Rules 6.02(b)–(c), 6.03(a), (c) [Ex. 17-2 at 39–40]. The Chairman's role is to enforce the rules, by preserving "strict order and decorum," Rule 2.01(a)(2)(A) [Ex. 17-2 at 8–9], and by barring a speaker who makes "impertinent" remarks, Rule

6.05 [Ex. 17-2 at 41]. Even that decision, however, is not final, because a majority of the commissioners present may vote to let the speaker continue. *Id.*; *see* Compl. ¶ 46 (conceding the Chairman's authority was "subject only to permission to continue granted by a majority of commissioners present"). An official whose discretion is "constrained by policies not of that official's making" is not a final policymaker, and neither is one whose decisions are subject to meaningful review. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality); *see Pembaur*, 475 U.S. at 481–82.

Fishback also argues that the Board "ratified" the Chairman's decision to cut him off because the commissioners did not vote to let him continue speaking. Resp. at 14; Compl. ¶¶ 49, 72. Ratification, however, requires approval of "not only the decision itself, but also the unconstitutional basis for it." *Matthews*, 294 F.3d at 1297; *see also* Mot. at 22. The Complaint alleges only that the commissioners watched and did nothing. Compl. ¶ 49. Silence is not approval, much less approval of a viewpoint-based motive. Fishback's only answer is that *Matthews* arose on a developed record, Resp. at 14, but he cites no case to suggest the ratification standard changes at the pleading stage. He also seeks "discovery into the Board's contemporaneous understanding" of the proceedings, Resp. at 14, but he does not respond to Defendants' argument that discovery follows a well-pleaded complaint, not the other way around. Mot. at 23 n.8. This argument, too, is conceded. Because Fishback fails to meet the pleading standard for municipal liability, the County is entitled to dismissal of Count II.[3]

---

[3] Fishback cannot cure these defects through his improper request for leave to amend. Resp. at 14–15. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (cleaned up).

## IV. The Court Lacks Subject Matter Jurisdiction Over Count III.[4]

Defendants argued that Fishback's request for a declaration that the County violated the First Amendment on September 1, 2026, would be "nothing more than a gratuitous comment without any force or effect." Mot. at 25 (cleaned up). In response, Fishback summarily states that his declaration "concerns the parties' continuing dispute over how the rules may be applied to his intended future speech." Resp. at 16. He cites no authority for that position. Nor does he respond to any of the cases cited by Defendants in support of their position. The Court should treat this argument as abandoned. *See Sapuppo*, 739 F.3d at 681.

As for prospective relief, Fishback lists six items which describe the forum, rules, and officials involved in a ***past*** event. Resp. at 15. But "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up). And Fishback cites no case suggesting the hypothetical injury he believes will occur in the future satisfies the "real and immediate threat" of future injury Article III demands. *Id.* at 105. The injury Fishback would have this Court enjoin depends on him someday presenting a germane argument on an unidentified financial item, and on a presiding officer treating it as "categorically irrelevant," Compl. ¶ 80, which no presiding officer has done.

Fishback tries to distinguish *Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006), because the Board meets on a "recurring public schedule" and because, unlike the *Elend* plaintiffs, he has already been removed once. Resp. at 15–16. Neither distinction holds. The *Elend* plaintiffs had also been removed from the forum they sought to return to. They identified the recurring type of event—presidential appearances, including at the same venue—as well as the message they

---

[4] Fishback also does not respond to Defendants' argument that the official-capacity claim against the Chairman in Count III duplicates the claim against the County. Mot. at 9 n.6. That argument is also conceded. *See Bank of Am.*, 564 F. App'x at 434.

intended to convey. *Id.* at 1202–04. The Eleventh Circuit still held their allegations insufficient because they identified no particular event, time, or manner of speech. *Id.* at 1207–08. Fishback's allegations have the same defects. He identifies no item on any future agenda, only a category of "County bond, investment, or financial-policy matters." Compl. ¶ 78. Because Fishback has not alleged an actual controversy, the Court lacks subject matter jurisdiction over Count III.[5]

## V. The Complaint Is a Shotgun Pleading, and the Demand for Punitive Damages Should Be Stricken.

Fishback concedes that Counts II and III incorporate every preceding count. Resp. at 17. And although a shotgun-pleading dismissal generally carries one opportunity to replead, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018), repleading cannot cure the immunity, municipal-liability, and standing defects identified above.

As for punitive damages, the allegations Fishback identifies, Resp. at 18, either describe the challenged acts themselves—cutting his microphone and ordering his removal—or state legal conclusions, and none shows "evil motive or intent" or "reckless or callous indifference." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Fishback also fails to address the case on which the Motion relied, Mot. at 28, and he renews his procedurally improper request to amend. Resp. at 19. If Count I is dismissed, the demand for punitive damages falls with it; if any part survives, the demand should be stricken for failure to meet the pleading standard.

## CONCLUSION

For the foregoing reasons, and those raised in Defendants' Motion to Dismiss, Defendants respectfully request that the Court dismiss the Complaint.

[5] Fishback all but concedes that Count III is not an independent claim and asks the Court to "construe Count III as a request for relief tied to" Counts I and II. Resp. at 16. The Court should dismiss this count for lack of subject matter jurisdiction, which cannot be cured simply by moving this count into the prayer for relief, as Fishback alternatively suggests.

Dated: October 16, 2026

Respectfully submitted,

**GERALDINE BONZON-KEENAN**
Miami-Dade County Attorney

By: *<u>/s/ Fabiana Cohen</u>*
Fabiana Cohen
E-mail: cohenf@miamidade.gov
Florida Bar No. 119732
Jennifer L. Hochstadt
E-mail: jennifer.azar@miamidade.gov
Florida Bar No. 56035
Assistant County Attorneys
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. First Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Facsimile: (305) 375-5611
*Counsel for Defendants*